# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                                         )

      v.               )

                                         )      I.D. No. 2105011019

PAUL A. PERRY,         )

                                         )

         Defendant.     )

Submitted: September 21, 2023
Decided: November 27, 2023

## MEMORANDUM OPINION AND ORDER

***Decision After Bifurcated Competency Hearing. Defendant Determined to be Competent.***

Jason C. Cohee, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State.*

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Associates, P.A., Wilmington, Delaware, *Attorney for Defendant.*

**Primos, J**.

On this 27th day of November 2023, upon consideration of the expert reports and the testimony presented at the August 21, 2023, bifurcated competency hearing ("the Hearing"), the Court finds that (1) Defendant Paul Perry ("Mr. Perry") is competent and that (2) he was competent at the time that he pleaded guilty.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2022, Mr. Perry pleaded guilty to one count of Rape in the Third Degree and one count of Strangulation. On November 17, 2022, during a sentencing proceeding, however, Mr. Perry, through his then counsel, orally moved to withdraw his guilty plea.[1] On November 30, 2022, Mr. Perry filed a written motion to withdraw his guilty plea.[2]

The motion relied on the Presentence Investigation Report ("PSI Report"), which explained that Mr. Perry suffers from ongoing schizophrenia and auditory hallucinations,[3] and alleged that Mr. Perry's counsel was unaware of these conditions until the PSI Report was completed.[4] Mr. Perry further argued that the severity of his mental illness implicated both possible defenses and alternative pleas that his counsel might have considered, including not guilty by reason of insanity and guilty but mentally ill, which undermined his ability to have entered a knowing and voluntary plea, as required by Superior Court Criminal Rule 11(d).[5]

On December 22, 2022, the State filed its response arguing that Mr. Perry's motion should be denied, or, in the alternative, that the "Court defer ruling on the motion and order Defendant to undergo a psychiatric evaluation to determine

---

[1] D.I. 27.

[2] Def.'s Mot. to Rescind Guilty Plea (D.I. 29) [hereinafter "Mot. to Rescind"].

[3] *Id.* ¶¶ 6–10. Mr. Perry's auditory hallucinations sometimes say, "My name is Legion and come follow me." Psychological Evaluation (July 14, 2023) at 6 (D.I. 53) [hereinafter "Dr. Cooney-Koss Report"]. It is a male voice that tends to whisper when Mr. Perry is medicated but is loud when untreated. Dr. Cooney-Koss Report at 6. These auditory hallucinations began when Mr. Perry started using drugs. Dr. Cooney-Koss Report at 6.

[4] Mot. to Rescind ¶ 11.

[5] *Id.* ¶¶ 13–14.

Defendant's competency" at the time of the offense and at the time he entered the plea agreement.[6] On December 30, 2022, Mr. Perry filed a reply[7] in which he acknowledged the State's request and responded that his "psychiatric state during the criminal acts and afterward cannot be treated with speculation."[8] On January 12, 2023, the Court deferred Mr. Perry's motion to rescind his guilty plea pending the results of a psychiatric evaluation conducted by the Delaware Psychiatric Center (the "DPC").[9]

On February 2, 2023, the State's expert, Dr. Constance Mesiarik[10] of the DPC, examined Mr. Perry.[11] On March 27, 2023, Dr. Mesiarik filed her first report with the Court opining, *inter alia*, that Mr. Perry is competent to stand trial.[12] Dr. Mesiarik used the Fitness Interview Test – Revised ("FIT-R"), which addresses three categories: (1) factual knowledge of the criminal proceedings; (2) appreciation of personal involvement in and importance of the proceedings; and (3) capacity to communicate with and assist counsel.[13] Dr. Mesiarik opined that, despite "a significant history of mental health issues," Mr. Perry "exhibited a reasonable factual and rational understanding of the charges and proceedings, and appeared to understand the concept of assisting in his defense."[14]

On February 3, 2023, prior to the issuance of Dr. Mesiarik's report, Mr.

---

[6] State's Resp. Def.'s Mot. Withdraw Guilty Plea at 8–9 (D.I. 32) [hereinafter "State's Resp."].
[7] Mr. Perry requested, and was granted, leave of court to file the reply.
[8] Def.'s Reply State's Resp. ¶¶ 7–8 (D.I. 33).
[9] *State v. Perry*, 2023 WL 179294, at *3 (Del. Super. Jan. 12, 2023).
[10] Dr. Mesiarik, PhD, JD, earned her PhD in Clinical Psychology from Drexel University and her law degree from Villanova University. Tr. Competency Hr'g (Aug. 21, 2023) at 20:16–21:07. Dr. Mesiarik has conducted close to 100 independent evaluations. *Id.* at 20:09–20:13.
[11] Delaware Psychiatric Center Report (Mar. 27, 2023) at 5 (D.I. 42) [hereinafter "Dr. Mesiarik Report I"].
[12] *Id.*
[13] *Id.* at 4.
[14] *Id.* at 4–5. Dr. Mesiarik concedes that she did not formally assess Mr. Perry's intellectual functioning, but that it appeared to be in the low range. *Id.* at 4.

Perry's current counsel entered an appearance on his behalf.[15] In April 2023, despite Dr. Mesiarik's conclusion regarding Mr. Perry's competency, Mr. Perry's counsel raised concerns about his competency and requested that he be reevaluated by a defense expert to determine both his current competency and his competency at the time he entered the plea. The Court granted that request.

Defense expert Dr. Laura Cooney-Koss[16] conducted an independent evaluation on May 24 and 25, 2023, and submitted a report on July 14, 2023. Dr. Cooney-Koss assessed Mr. Perry's present and past competency using the McGarry criteria,[17] and his intellectual functioning using the Reynolds Intellectual Assessment Scales (2d ed.).[18]

Dr. Cooney-Koss found that Mr. Perry's composite intelligence score was significantly below average, his verbal intelligence moderately below average, his nonverbal intelligence significantly below average, and his composite memory index significantly below average.[19] Dr. Cooney-Koss opined that, even though Mr. Perry "does possess some basic factual knowledge about the legal process[,]" his knowledge is "inadequate in several areas."[20] Dr. Cooney-Koss noted that Mr. Perry suffers from limited cognitive abilities and has a diminished ability to read, write, and do arithmetic, and that his functioning is adversely impacted by his psychiatric symptoms, specifically, schizoaffective disorder, bipolar type.[21] Although Mr. Perry

---

[15] On January 23, 2023, Mr. Perry's previous counsel was suspended from the practice of law for reasons unrelated to this case.

[16] Dr. Cooney-Koss, Psy.D., earned her Doctorate in Clinical Psychology from Widener University with a specialization in Forensic Psychology and a Master's in Criminal Justice. Tr. Competency Hr'g at 80:19–81:13. She has been a psychologist for 19 years. *Id.* at 81:04.

[17] *See infra* note 44.

[18] Dr. Cooney-Koss Report at 11–13.

[19] *Id.* at 11–12. Mr. Perry's IQ was determined to be 65. Tr. Competency Hr'g at 112:05–112:06.

[20] Dr. Cooney-Koss Report at 17.

[21] *Id.* at 16–17; *see also id.* 10–11 (explaining that Mr. Perry initially gave an incorrect age and struggled to articulate his date of birth correctly by saying that he always had trouble with numbers).

4

was "extremely slow" in responding to questions in the assessment of intellectual functioning, his thoughts were clear and organized.[22]

With regard to Mr. Perry's competency when he pleaded guilty, Dr. Cooney-Koss opined that his limitations in cognitive functioning, as well as his psychiatric symptoms, would have been "present" and "essentially identical" at that time,[23] and that he "did not truly understand or appreciate the plea agreement" that he signed on August 10, 2022.[24] With respect to Dr. Mesiarik's conflicting opinion, Dr. Cooney-Koss opined that Dr. Mesiarik's evaluation generally contained insufficient supporting detail with regard to Mr. Perry's understanding of the legal process and did not address "intellectual functioning, his verbal expression, or his psychiatric functioning."[25]

Given the conflicting opinions regarding competency, the Court scheduled the Hearing to consider both Mr. Perry's current competency as well as his competency at the time he entered the plea. Because Dr. Mesiarik had not addressed Mr. Perry's competency at the time of the plea in her initial report, the Court ordered that she file a supplemental report addressing that issue. On July 25, 2023, Dr. Mesiarik filed that supplemental report opining that Mr. Perry was competent at the time that he entered his guilty plea on August 10, 2022.[26] Dr. Mesiarik relied upon her previous evaluation and treatment records from around the time of the guilty plea.[27]

On August 21, 2023, at the Hearing, both Dr. Mesiarik and Dr. Cooney-Koss testified in depth pursuant to their reports of Mr. Perry's present competency and his

---

[22] *Id.* at 11.
[23] *Id.* at 19.
[24] *Id.* at 21.
[25] *Id.* at 10.
[26] Delaware Psychiatric Center Report (July 17, 2023) at 2 (D.I. 55) [hereinafter "Dr. Mesiarik Report II"].
[27] *Id.* at 1–2.

competency at the time that he entered the guilty plea.[28] Following the Hearing, counsel submitted written closing arguments.[29] Mr. Perry's motion to rescind his guilty plea has not been withdrawn and remains pending.

## ANALYSIS

### I. Burden of Proof.

The State bears the burden of proving, by a preponderance of the evidence, the defendant's present competency.[30] On a motion to withdraw a guilty plea, however, where the defendant has signed the guilty plea forms and a guilty plea colloquy has been held, the defendant bears the burden of proving, by clear and convincing evidence, that he or she was incapable of entering a knowing and voluntary plea at the time that he entered into the plea agreement, and that burden would also apply to any claim by the defendant that he or she was incompetent at the time of the plea.[31]

### II. Legal Standard.

"Competency is a legal concept, not a medical one."[32] The Delaware Supreme Court recently concluded that "the *Dusky* competence standard applies to a

---

[28] *See generally* Tr. Competency Hr'g.

[29] D.I. 59, D.I. 60.

[30] *See, e.g.*, *Diaz v. State*, 508 A.2d 861, 863 (Del. 1986) ("The prosecution must prove the defendant's competence by a preponderance of the evidence."); *Smith v. State*, 918 A.2d 1144, 1148 (Del. 2007) ("The prosecution bears the burden of proving a defendant's legal competency by a preponderance of the evidence.").

[31] *See Benn v. State*, 108 A.3d 1224, 2015 WL 304257, at *2 (Del. Jan. 23, 2015) (TABLE) ("There is no clear and convincing evidence that [the defendant]'s mental health or prescription medications made him incapable of entering a knowing, intelligent, and voluntary guilty plea. We therefore conclude that the Superior Court did not err in denying [the defendant]'s motion to withdraw his guilty plea."); *but see State v. Rodgers*, 1994 WL 164573, at *5 (Del. Super. Apr. 14, 1994) ("[W]hen a defendant seeks to withdraw a guilty plea on the grounds of incompetency at the time of entry of the guilty plea, the burden of proof still rests with the State to establish a defendant's competency by a preponderance of the evidence.").

[32] *State v. Silvils*, 2022 WL 17494203, at *4 (Del. Super. Dec. 8, 2022) (citing *Feliciano v. State*, 157 A.3d 1235, 2017 WL 897421, at *13 (Del. Mar. 3, 2017) (TABLE) (reproducing a Superior Court order and affirming for the reasons stated therein)).

defendant's decision to withdraw his plea."[33]  Thus, like any other competency determination, "the court must be satisfied that the defendant (1) 'has a rational as well as a factual understanding of the proceedings against him' and (2) 'has sufficient present ability to consult with his lawyer with a reasonable degree of understanding.'"[34]  It is also required that the defendant be able to assist in preparing his defense.[35]  This competency test is codified.[36]

The legal standard for competency is not a high threshold.[37]  The defendant need not "understand every legal nuance in order to be considered competent[,]"[38] or possess "the intelligence or legal sophistication to participate actively in [his or her] own defense[.]"[39]  The defendant's understanding must be compared to that of an average criminal defendant rather than that of a reasonable person.[40]  Mere lack

---

[33] *Taylor v. State*, 213 A.3d 560, 570 (Del. 2019).  While the plea in *Taylor* had not yet been accepted by the trial court when the defendant sought to withdraw it, this distinction does not affect the underlying rationale, which is that the defendant should be able to rationally understand and consult with his attorney about the legal ramifications of withdrawing his plea.

[34] *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).  *See also State v. Shields*, 593 A.2d 986, 1010 (Del. Super. 1990); *State v. Reyes*, 2000 WL 703158, at *3 (Del. Super. Apr. 28, 2000); *State v. Serra*, 2002 WL 519910, at *6 (Del. Super. Apr. 1, 2002); *State v. Irving*, 2003 WL 21357601, at *2 (Del. Super. May 27, 2003); *State v. Simmons*, 2005 WL 3007808, at *1 (Del. Super. Aug. 31, 2005).

[35] *Reyes*, 2000 WL 703158, at *3 (citing *Drope v. Missouri*, 420 U.S. 162 (1975)).

[36] 11 *Del. C.* § 404(a).

[37] *See Shields*, 593 A.2d at 1012 ("[F]rom a legal standpoint, the competency threshold is quite low."); *see also Feliciano*, 2017 WL 897421, at *13 ("[L]egal competency is not an exacting standard.").

[38] *Reyes*, 2000 WL 703158, at *3.  *See also Shields*, 593 A.2d at 1005; *State v. Wright*, 1994 WL 555556, at *9 (Del. Super. Oct. 5, 1994) ("Nowhere does the law provide that competence means that a defendant must take an ideal or complete role in the preparation of his case."), *aff'd*, 676 A.2d 909, 1996 WL 21034 (Del. Jan. 4, 1996) (TABLE); *Irving*, 2003 WL 21357601, at *2; *State v. Leatherberry*, 2018 WL 2733367, at *4 (Del. Super. May 1, 2018) ("The fact that [the defendant] may not understand all of the various nuances associated with pleading guilty or testifying at trial is the very reason he has counsel to advise him—it does not mean he is not competent to stand trial."); *Silvils*, 2022 WL 17494203, at *5.

[39] *Silvils*, 2022 WL 17494203, at *5.

[40] *Shields*, 593 A.2d at 1012–13; *Reyes*, 2000 WL 703158, at *3; *see also Feliciano*, 2017 WL 897421, at *13 ("Competency is, to some extent a relative matter arrived at by taking into account the average level of ability of criminal defendants.") (citations omitted).

of intelligence, or an attorney's having to break down complex topics for a defendant to better understand, is not enough to establish incompetency.[41]

Determining competency requires a "fact-specific inquiry that takes into account the totality of the circumstances and does not necessarily turn upon the existence or nonexistence of any one factor."[42] The Court must consider the facts of the particular case and must not rely on generalized concepts or theories.[43]

Delaware courts have identified two different sets of criteria that are instructive in making a competency determination: the McGarry factors[44] and the *Guatney* factors.[45] These tests "evaluate a defendant's *basic* knowledge of the

---

[41] *See Feliciano*, 2017 WL 897421, at *13 ("We cannot, however, exclude from trial all persons who lack the intelligence or legal sophistication to participate actively in their own defense.") (citations omitted).

[42] *Feliciano*, 2017 WL 897421, at *13; *see also Irving*, 2003 WL 21357601, at *2 ("Determining a defendant's mental competency to stand trial is a very fact-intensive endeavor.").

[43] *Reyes*, 2000 WL 703158, at *3.

[44] *See Silvils*, 2022 WL 17494203, at *5. The McGarry factors are also known as the "Competency to Stand Trial Instrument." *Id.* The McGarry factors look at:

> (1) The defendant's ability to appraise the legal defenses available; (2) the defendant's ability to plan a legal strategy; (3) level of manageable behavior; (4) quality of relating to his or her attorneys; (5) ability to appraise the participants in the courtroom; (6) understanding of court procedures; (7) appreciation of the charges; (8) appreciation of the range and nature of the penalties; (9) ability to appraise the evidence and likely outcome; (10) capacity to disclose to his or her attorneys available pertinent facts surrounding the offense; (11) capacity to challenge prosecution witnesses realistically; (12) capacity to present relevant testimony; and (13) motivation for a positive outcome.

*Id.* at *7.

[45] *Id.* at *5 n.30 (citing *State v. Guatney*, N.W.2d 538 (Neb. 1980)). The *Guatney* factors overlap with the McGarry factors but are somewhat more specific:

> (1) That the defendant has sufficient mental capacity to appreciate his presence in relation to time, place, and things; (2) that his elementary mental processes are such that he understands that he is in a court of law charged with a criminal offense; (3) that he realizes there is a judge on the bench; (4) that he understands that there is a prosecutor present who will try to convict him of a criminal charge; (5) that he has a lawyer who will undertake to defend him against the charge; (6) that he knows that he will be expected to tell his lawyer all he knows or remembers about the events involved in the alleged crime; (7) that he understands that there will be a jury present to pass upon evidence in

8

process and his or her ability to participate in his or her defense."[46]

## A. Mr. Perry is presently competent.

Both testifying experts were qualified, credible, and articulate. Although they expressed differing opinions regarding Mr. Perry's competency, both experts provided helpful information to the Court. Ultimately, however, "where there is conflict in expert testimony, the fact-finder is free to adopt the opinions of some and reject others."[47] The trial judge makes the sole determination of competency for trial.[48]

### 1. Mr. Perry has a rational and factual understanding of his proceedings comparable to that of the average criminal defendant.

Applying both the McGarry and the *Guatney* factors, the outcome is the same: Mr. Perry is competent.

Mr. Perry's psychiatric symptoms do not seem to play a large role in Dr. Cooney-Koss's analysis.[49] Instead, Dr. Cooney-Koss seems primarily concerned

---

determining his guilt or innocence; (8) that he has sufficient memory to relate answers to the questions posed to him; (9) that he has established rapport with his lawyer; (10) that he can follow the testimony reasonably well; (11) that he has the ability to meet stresses without his rationality or judgment breaking down; (12) that he has at least minimal contact with reality; (13) that he has the minimum intelligence necessary to grasp the events taking place; (14) that he can confer coherently with some appreciation of proceedings; (15) that he can both give and receive advice from his attorneys; (16) that he can divulge facts without paranoid distress; (17) that he can decide upon a plea; (18) that he can testify, if necessary; (19) that he can make simple decisions; and (20) that he has a desire for justice rather than undeserved punishment.

*Id.*

[46] *Id.* at *5 (emphasis supplied).

[47] *Shields*, 593 A.2d at 1011 (citing *United States v. O'Neal*, 431 F.2d 695 (5th Cir. 1970)).

[48] *Feliciano*, 2017 WL 897421, at *13.

[49] Mr. Perry argues that his intellectual functioning was not thoroughly assessed by Dr. Mesiarik. Def.'s Post-Hr'g Arg. at 1–2 (D.I. 59). The Court, however, notes that the FIT-R test is legally sufficient. That test mirrors the *Dusky* test, which has the approval of the Supreme Court of the United States and our Supreme Court. *See generally Dusky*, 362 U.S. 402 (1960); *Drope*, 420 U.S. 162 (1975); *Taylor*, 213 A.3d 560 (Del. 2019). Further, the FIT-R test is similar to 11 *Del. C.* § 404(a).

with Mr. Perry's limited cognitive ability and its impact on his capacity to understand the legal process and to make informed decisions regarding his case.[50] Dr. Cooney-Koss has admitted, however, that Mr. Perry has "some basic factual knowledge about the legal process[.]"[51]

The Court agrees. Dr. Cooney-Koss speculates that Mr. Perry's hallucinations could be distracting while he is in court or communicating with his attorney, but no specific examples of such interference have been provided.[52] There is no evidence that Mr. Perry has any delusional beliefs interfering with his rational or factual understanding of his proceedings. Despite some inaccuracies, Mr. Perry appears to have a generally sufficient grasp of the criminal legal process when viewed as a whole.

Mr. Perry understands the roles of his attorney, the prosecutor, the judge, and the jury.[53] As to his attorney, Mr. Perry knows that his attorney is "the person that is supposed to help the defendant with their trial."[54] Mr. Perry understands that the

---

[50] *See* Dr. Cooney-Koss Report at 3–4 (explaining that Mr. Perry had "tremendous difficulties" reading, writing, and arithmetic); *see also id.* at 10–11 (explaining that Mr. Perry struggled with giving correct dates and numbers for his birthday, age, and mother's phone number).

[51] *Id.* at 17.

[52] *See id.* at 19. When Mr. Perry was specifically asked whether his auditory hallucinations have ever bothered him in court, he said, "I don't know. I just know I was really scared." *Id.* at 15.

[53] *See Rodgers*, 1994 WL 164573, at *9 ("He grasps that he has been charged with serious crimes. He understands that there is a judge, that Mr. Otlowski is his attorney whose job it is to defend him and that Mr. McTaggart is the prosecutor for the State. He has told Mr. Otlowski, to the best of his ability, about the facts surrounding the various crimes. He knows that a jury could decide whether or not he is guilty if he had not plead [sic] guilty. He is at least minimally competent to provide his attorney with information necessary or relevant to construct a defense, and to have knowingly, voluntarily and intelligently made the decision to enter the guilty plea[.]"); *see also State v. J.S.*, 2005 WL 3507990, at *6 (Del. Fam. Aug. 2, 2005) ("Although the Respondent was unable to understand all the legal vocabulary terms, he did understand the role of his attorney, the judge, and the role of the prosecutor. Thus, the Court concludes that the Respondent generally understands the nature of the proceedings, as required by 11 *Del. C.* § 404(a).").

[54] Dr. Cooney-Koss Report at 13. Mr. Perry did tell Dr. Cooney-Koss that the defense attorney is "neutral" but qualified this with the statement that "if I had a paid lawyer, I would have been out of here by now," thus implying that a "paid" attorney would not be "neutral." *Id.*

prosecutor works for the State, will "try to keep [him] in jail," and would be able to ask him questions.[55]  Mr. Perry believes that a judge is "supposed to make sure justice is served" and "hear both sides."[56]  According to Mr. Perry, "[w]hen we go to court [] the prosecutor tell[s] his side and then I tell my side of what happened," and then "the jury decides who is telling the truth."[57]  Further, if a jury is present, the judge lets the jury decide,[58] but if "it gets out of order, [then the judge will] tell everyone to calm down."[59]  Mr. Perry knows that, in court, he should "speak when spoken to" and "don't be looking around."[60]

Mr. Perry has accurately identified the offenses to which he pleaded guilty and has acknowledged that they are serious.[61]  He has discussed the possible consequences of pleading guilty and has expressed his belief that his "attorney had told him he could get him a plea for a two-year sentence, which [he] was agreeable to."[62]  Mr. Perry understands that "pleading guilty" means "that you did the crime."[63]  Moreover, Mr. Perry is aware that he might have been required to testify at trial, "to tell what [he has] seen."[64]  Mr. Perry also understands that taking an oath requires

---

[55] *Id.*; *see also* Tr. Competency Hr'g at 30:07–30:08 (according to Dr. Mesiarik, Mr. Perry understands "the adversarial nature of the proceedings").

[56] Dr. Cooney-Koss Report at 13–14. Mr. Perry also understands that the judge has authority to sentence him and that he must abide by the judge's orders.  Dr. Mesiarik Report I at 5; *see also* Tr. Competency Hr'g at 31:15–31:17, 123:16–126:06.

[57] Dr. Cooney-Koss Report at 13.

[58] *Id.* at 13–14.

[59] *Id.*

[60] *Id.* at 14.

[61] *See id.* at 18 (Mr. Perry describing his charges to Dr. Cooney-Koss as "[s]erious. 'Cause I put my hands on someone. I should have taken it a different route. I wasn't thinking about it at the time."); *see also id.* (Mr. Perry describing a felony as "[s]omething that stops me from getting a good job. You can't vote. You lose your rights to being a citizen.").

[62] Dr. Mesiarik Report I at 4–5.

[63] Dr. Cooney-Koss Report at 14; *see also id.* (Mr. Perry explaining that why he believed he would be offered a plea bargain was "[c]ause they really have nothing on me.  It's her word (meaning victim) against mine; however, she won't come to court.").  Mr. Perry did, however, inaccurately state that if you plead not guilty, then "I guess you're set free."  *Id.*

[64] *Id.*

11

telling the truth.[65] Finally, if Mr. Perry does not understand something about the proceedings, he has demonstrated both ability and inclination to ask clarifying questions.[66]

Mr. Perry did have trouble comprehending the meaning of "beyond a reasonable doubt," which he described as "[t]hat a person did it, but they really ain't got nothing on him, but we think he did it anyway."[67] That confusion alone, however, is not enough to defeat Mr. Perry's other rational and factual understandings.[68]

### 2. *Mr. Perry has the capacity to assist counsel in his defense.*

Legal competency is not a high threshold.[69] Mr. Perry need not be intelligent or legally sophisticated; rather, he must have a basic and reasonable ability to assist counsel.[70]

At the time of Mr. Perry's evaluations, he had, at least, the "elementary mental processes" and "minimum intelligence necessary" to grasp the basic realities of his criminal case.[71] Even though Mr. Perry was deemed "extremely slow," his thoughts were clear and organized.[72] Defense counsel might have to thoroughly explain and patiently break down concepts for Mr. Perry, but that does not equate to incompetence.[73]

---

[65] Tr. Competency Hr'g at 30:16–30:18, 62:10–62:12.

[66] *See* Dr. Cooney-Koss Report at 11 ("Most of the time, Mr. Perry showed an ability to ask for clarification when needed."); *see also id.* at 13 ("When there are occasions where he does not understand his attorney, Mr. Perry will 'ask her to break it down.'").

[67] *Id.* at 18; *see also* Tr. Competency Hr'g at 30:19–30:21, 62:21–64:22.

[68] *See Feliciano*, 2017 WL 897421, at *13 (explaining that the Court must consider the totality of circumstances and that the failure to satisfy one factor is not dispositive).

[69] *Id.*; *Shields*, 593 A.2d at 1012.

[70] *See Silvils*, 2022 WL 17494203, at *5 (defendants need not possess "the intelligence or legal sophistication to participate actively in their own defense").

[71] *See supra* note 45.

[72] Dr. Cooney-Koss Report at 11.

[73] *See Reyes*, 2000 WL 703158, at *4 ("The Court recognizes that details of the proceedings and

12

Mr. Perry is oriented as to time and place.[74] He has had auditory hallucinations as recently as January 2023, including ongoing hallucinations, but there is no evidence of any effect of delusional thinking upon his capacity.[75] Mr. Perry denies experiencing command hallucinations on his current medication regime.[76] Further, Mr. Perry has provided a clear account of the alleged incident.[77] Also, Mr. Perry has discussed the importance of maintaining respectful behavior in the courtroom.[78] Mr. Perry knows that the judge has the authority to sentence him and that he has to abide by the judge's orders.[79] Furthermore, as noted *supra*, Mr. Perry has "basic factual knowledge about the legal process,"[80] and has the ability and inclination to speak with his attorney about any disagreements.[81] Moreover, Mr. Perry is aware that his best defense is to catch lies told in court.[82]

Thus, Mr. Perry has the capacity to assist defense counsel and supplement an already-established rapport.[83] Although Mr. Perry's cognitive limitations do seem

---

charges may have to be thoroughly and patiently explained, but by no means does that render him incompetent."); *see also State v. Reed*, 2004 WL 2828043, at *7 (Del. Super. Apr. 21, 2004) (a defendant who is competent may, on account of intellectual disabilities, need complex issues carefully "explained to [him or her] with patience and in concrete and simple terms.").

[74] Tr. Competency Hr'g at 29:08–29:09.

[75] *Id.* at 31:18–31:22.

[76] Dr. Mesiarik Report I at 3–4; Dr. Cooney-Koss Report at 6.

[77] Dr. Mesiarik Report I at 5; *see also* Dr. Cooney-Koss Report at 15 (Mr. Perry maintains that he "did not really strangle the victim" but "[he] can't prove [he] didn't strangle her.").

[78] Dr. Mesiarik Report I at 5.

[79] *Id.*

[80] Dr. Cooney-Koss Report at 11–13; *see also* Tr. Competency Hr'g at 125:23–126:03 (Mr. Perry recognizing that he would have to answer the judge and that he is "defending [him]self and telling [his] side of the story").

[81] Dr. Cooney-Koss Report at 13.

[82] Dr. Mesiarik Report I at 5.

[83] *See, e.g.*, Dr. Cooney-Koss Report at 15 ("I'll talk to her about that next time I see her."). Additionally, Mr. Perry did not trust his prior counsel, and, to some degree, he does not trust his current counsel, although, according to Dr. Cooney-Koss, he "seems to like" his current counsel. Tr. Competency Hr'g at 122:01–123:15, 131:22–131:23. Nonetheless, Mr. Perry feels comfortable speaking with an attorney about any potential disagreement. Tr. Competency Hr'g at 32:04–32:05.

13

to affect his ability to make informed decisions under time pressure or to understand the options presented to him, they do not rise to the level of rendering him incompetent when compared to the average criminal defendant.

**B. Mr. Perry was competent at the time of the plea agreement.**

Because of Mr. Perry's answers on the truth-in-sentencing form and the plea colloquy, the burden is on him to establish, by clear and convincing evidence, that his plea was not knowing and voluntary.[84] It is essentially undisputed that Mr. Perry's present competency does not meaningfully differ from his competency as of August 2022, the time at which he pleaded guilty.[85] Both experts appear to agree that, despite the difficulty of giving retrospective opinions, there is little reason to believe that there is any meaningful difference between Mr. Perry's competency now and then.[86]

Mr. Perry consented to the plea agreement on August 10, 2022.[87] Notes from Mr. Perry's medical chart dated August 9, 2022, indicate that he was "agreeable and doing well" and that "there is nothing in the records to suggest that Mr. Perry was experiencing instability at this time."[88] Further, records from August 26, 2022, show that he still reported hearing and seeing things, but his thought process was coherent and relevant, his overall understanding was good, and his problem solving ability

---

[84] *See Savage v. State*, 815 A.2d 349, 2003 WL 214963, at *2 (Del. Jan. 31, 2003) (TABLE) ("In the absence of clear and convincing evidence to the contrary, [the defendant] is bound by his answers on the Truth-in-Sentencing Guilty Plea Forms and by his testimony prior to the acceptance of the guilty plea."); *see also Scarborough v. State*, 938 A.2d 644, 650 (Del. 2007) ("Where the defendant has signed his Truth-in-Sentencing Guilty Plea Forms and has answered at the plea colloquy that he understands the effects of the plea, the defendant must show by clear and convincing evidence that he did not sign those forms knowingly and voluntarily."); *Benn*, 2015 WL 304257, at *2 ("[The defendant] is bound by his answers during the guilty plea colloquy absent clear and convincing evidence to the contrary.").

[85] Dr. Mesiarik Report II at 1–2; Dr. Cooney-Koss Report at 19.

[86] *Compare* Dr. Mesiarik Report II at 1–2, *with* Dr. Cooney-Koss Report at 19–20.

[87] D.I. 26.

[88] Dr. Mesiarik Report II at 1–2.

was good.[89]  Furthermore, Mr. Perry's medication regime through July and August 2022 was similar to his medication regime at the time Dr. Mesiarik conducted her evaluation in February 2023.[90]  In short, Mr. Perry has failed to establish, by clear and convincing evidence, that he was incapable of entering a knowing and voluntary guilty plea on account of incompetency in August 2022.

There is some evidence in the record, however, that Mr. Perry may have been misinformed by his prior counsel that his guilty plea would result in a two-year prison sentence rather than a potential sentence exceeding the two-year minimum mandatory sentence.  Whether Mr. Perry can prove, by clear and convincing evidence, that this was the case and that, as a result, he has demonstrated a fair and just reason for withdrawing his plea pursuant to Superior Court Criminal Rule 32(d), cannot be decided by the Court on the record before it.  It is up to Mr. Perry to determine, upon consultation with his counsel, whether he will pursue his pending motion on this more limited basis.

## CONCLUSION

For the foregoing reasons, the Court is persuaded that the State has met its burden of proving, by a preponderance of the evidence, that Mr. Perry is presently competent. Furthermore, Mr. Perry has failed to carry his burden of showing that he was not competent at the time he entered his guilty plea.  Accordingly, Mr. Perry can choose either to pursue a revised motion to withdraw guilty plea, or to proceed to sentencing.  Defense counsel is instructed to consult with Mr. Perry and to inform the Court, **on or before December 20, 2023**, of Mr. Perry's decision regarding the motion.

**IT IS SO ORDERED.**

---

[89] *Id.*
[90] *Id.*

15

_____

Noel Eason Primos, Judge

NEP/tls
*Via Email*
oc:  Prothonotary
cc:  Counsel of Record

16